IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARRYL NEWKIRK                          :
                                        :                    CIVIL ACTION
        v.                              :
                                        :                    NO. 09-0763
SUPERINTENDENT RAYMOND                  :
LAWLER, ET AL.                          :

**MEMORANDUM**

**SURRICK, J.**                                   MARCH _9_ , 2017

Presently before the Court is Petitioner Darryl Newkirk's *pro se* Petition for Writ of

Habeas Corpus, pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Petitioner seeks relief on the

grounds that he was denied the effective assistance of counsel.  The Honorable Carol Sandra

Moore Wells, United States Magistrate Judge, prepared a Report and Recommendation

("R&R"), pursuant to 28 U.S.C. § 636(b)(1)(B).  (R&R, ECF No. 12.)  Petitioner has filed

objections to the Report and Recommendation.  (Objections, ECF No. 13.)  For the following

reasons, the Report and Recommendation of the Magistrate Judge will be approved and adopted,

and the Petition for writ of Habeas Corpus will be denied without an evidentiary hearing.

**I.      BACKGROUND**

The Pennsylvania Superior Court summarized the facts leading to Petitioner's conviction

as follows:

> This case began on April 13, 1998.  Around 2:30 p.m., when Holly
> James and Lois DeVita returned to their home in the Old City section of
> Philadelphia, [Petitioner] greeted them.  He was their cleaning person.
> After gardening for about an hour, Ms. James went to her room to lie
> down; she put music on and closed the door.  At some point while Ms.
> James was upstairs resting, [Petitioner] admitted co-defendant Darryl
> Robinson ("Robinson") into the house.  [Petitioner] then took Ms. DeVita

to the basement where he bound her with extension cords, clothing and duct tape, beat her, covered her face and head with a thick towel, and taped a garbage bag over her head.  He also sexually assaulted her with a hard, blunt object.  Later, when Ms. James came downstairs, Robinson grabbed her, took her to the basement, and bound her with extension cords and duct tape.  [Petitioner] and Robinson fled in Ms. DeVita's vehicle.  Between 7:00 and 7:30 p.m., Ms. James was able to free herself. She discovered Ms. Devita's body, tried to perform CPR, but Ms. DeVita was dead.  Ms. James then ran to a neighbor's house for help.  Ms. DeVita had died between 4:00 and 5:00 p.m. of asphyxiation caused by the electrical cord being tied tightly around her neck.

[Petitioner] and Robinson stole a MAC card, money, and Ms. DeVita's Toyota RAV 4, in which Robinson drove them to southwest Philadelphia.  Around midnight, when [Petitioner] was driving the vehicle, he rear-ended another car.  He and Robinson fled the accident scene, left the vehicle a few blocks away, and then traveled to the Frankford section of the city where they hid in the apartment of Shera Jackson, who was the girlfriend of Roland Thomas.  Mr. Thomas was a friend of [Petitioner] and Robinson.

On April 17, 1998, Officer Joseph Domico received information from [Petitioner's] ex-girlfriend that he could be found in the Frankford section of the city.  Officer Domico went to that area and saw [Petitioner] at a payphone.  The officer called [Petitioner] over to the patrol car, but [Petitioner] ran and Officer Domico pursued him on foot.  [Petitioner] escaped by jumping over a five foot fence and dropping fifteen feet to the street below.  The next day, Officer Domico received information that [Petitioner] might be found in Shera Jackson's apartment in the Frankford section of the city.  Officer Domico and a more experienced officer, Officer Robert Walls, went to the address where Officer Walls knocked on the door and identified himself.  The officers heard several male voices from inside the apartment.  A few minutes later Shera Jackson answered the door and gave the officers permission to enter and search the apartment.  Officer Walls found [Petitioner] and Robinson hiding in a closet.

*Commonwealth v. Newkirk*, No. 1391 EDA 2003, slip op. at 1-3 (Pa. Super. Ct. 2005).

Following his arrest, Petitioner provided police with oral and written statements in which he admitted to being present for the murder, and participating in the robbery.

Prior to trial in the Court of Common Pleas of Philadelphia County, Petitioner filed a motion to suppress his statements to police.  The Honorable Jane C. Greenspan denied the motion.  On November 18, 1999, a jury found Petitioner guilty of first degree murder, burglary,

involuntary deviate sexual intercourse, criminal conspiracy, and two counts of robbery.  On February 8, 2000, Petitioner received a mandatory life sentence on the murder charge, and additional prison terms to be served consecutively for burglary, robbery, criminal conspiracy, and involuntary deviate sexual intercourse.

Although Petitioner did not initiate a timely direct appeal, the Court of Common Pleas granted leave to file a direct appeal *nunc pro tunc*.  Petitioner filed a direct appeal in the Pennsylvania Superior Court, complaining that the trial court erred by:  (1) denying his motion to suppress his oral statements to the police; (2) allowing a witness, Roland Thomas, to testify to Petitioner's planning of the robbery; and (3) permitting the Commonwealth to impeach Thomas' testimony.  The Superior Court affirmed Petitioner's conviction.  *Commonwealth v. Newkirk*, 883 A.2d 692 (Pa. Super. Ct. 2005).  The Pennsylvania Supreme Court denied Petitioner's request for review on December 29, 2005.  *Commonwealth v. Newkirk*, 892 A.2d 822 (Pa. 2005). Petitioner did not seek *certiorari* in the United States Supreme Court.

On April 27, 2006, Petitioner filed a *pro se* petition for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 *et seq.*., in the Court of Common Pleas.  Counsel was appointed, and subsequently requested the court's permission to withdraw, citing a lack of meritorious appellate claims.[1] The court then notified Petitioner of its intention to dismiss the petition without a hearing.  Petitioner filed a *pro se* objection, asserting ineffective assistance of trial counsel for failing to investigate and raise an alibi defense.  Petitioner also claimed that both trial and PCRA counsel had been deficient in failing to investigate a claim of racial animus in jury selection, pursuant to *Batson v. Kentucky*,

---

[1] Counsel sought permission to withdraw pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988).

476 U.S. 79 (1986).  On June 12, 2007, the court dismissed Petitioner's PCRA Petition and granted counsel leave to withdraw.

Petitioner filed an appeal of the dismissal of his PCRA Petition to the Pennsylvania Superior Court, arguing that:  (1) the Court of Common Pleas abused its discretion in dismissing his PCRA Petition and letting his PCRA counsel withdraw; and (2) his PCRA counsel was ineffective for seeking to withdraw.  The Pennsylvania Superior Court affirmed the trial court's dismissal on January 27, 2009.  *Commonwealth v. Newkirk*, 968 A.2d 794 (Pa. Super. Ct. 2009). Petitioner did not seek further review.

On February 19, 2009,[2] Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2254. (Pet. 11, ECF No. 1.)  Petitioner raises four claims.  First, Petitioner asserts that his trial counsel was ineffective for failing to raise a claim under *Batson*.  Second, Petitioner argues that his trial counsel was ineffective for failing to present an alibi defense.  Third, Petitioner argues that his trial counsel was ineffective for failing to litigate an alleged discovery violation under *Brady v. Maryland*, 373 U.S. 83 (1963).  Finally, Petitioner claims that his direct appellate counsel was ineffective for failing to argue that the weight and sufficiency of the evidence was inadequate to justify Petitioner's conviction for first-degree murder.  (Pet. 9.)

The Commonwealth responds that Petitioner's claims are procedurally defaulted and that they should be dismissed.  Alternatively, the Commonwealth argues that the claims lack merit and should be denied.  The R&R recommended dismissing Petitioner's fourth claim as procedurally defaulted, and denying Petitioner's first three claims as meritless.  In response, Petitioner timely filed Objections, which restated his first three grounds for habeas relief while

---

[2] A prisoner's *pro se* petition for habeas relief is deemed filed when the prisoner delivers it to prison authorities for mailing to the district court.  *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).

abandoning his fourth claim.

## II.   LEGAL STANDARD

### A.   De Novo Review of a Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge may designate a magistrate judge to file proposed findings and recommendations.  Any party may file written objections in response to those findings.  *Id.* § 636(b)(1)(C).  In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's Report and Recommendation.  Under this Rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections . . . ."  *Savior v. Superintendent of Huntingdon SCI*, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012) (quoting Local R. Civ. P. 72.1.IV(b)).  Once objections are filed, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  [The judge] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  28 U.S.C. § 636(b)(1)(C).  The Third Circuit has "assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court."  *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987).

### B.   Habeas Review under 28 U.S.C. § 2254

Any claim adjudicated by a state court is considered under the standard of review established by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  This standard provides that a federal district court cannot grant a writ of habeas corpus on a previously adjudicated claim, unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Pursuant to this statute, we presume that any findings of fact made by state courts are correct.  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

For a state court's adjudication of a habeas claim to be considered "contrary to" clearly established federal law,[3] the state court must arrive "at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  In determining whether a state court's decision fits within this definition of "contrary," a habeas court should be mindful of the "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).  As long as "neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent, the state court's legal determinations should stand. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam) (internal quotation marks omitted).

If the state court correctly identifies the governing precedent, its analysis is reviewed for an "unreasonable application" of the law.  *Williams*, 529 U.S. at 406-08.  In making the unreasonable application determination, the habeas court must ask whether the state court's application of the underlying Supreme Court precedent was objectively unreasonable.  *Id*. at 409.

---

[3] Although the statute refers to Supreme Court precedent, we are permitted to consider the decisions of the lower federal courts that have applied such precedent.  *See Marshall v. Fredericks*, 307 F.3d 36, 71 n.24 (3d Cir. 2002).

A habeas court cannot grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

For a habeas petitioner to obtain relief under § 2254(d)(2), he must demonstrate that the state court's factual determinations were "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockerell*, 537 U.S. 322, 340 (2003). However, a habeas court can "disagree with a state court's credibility determination." *Id*. If a state court's factual determination is unreasonable, a habeas court should grant relief under § 2254(d)(2). *Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004).

## III.   DISCUSSION

Ineffective assistance of counsel claims are evaluated under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668 (1984). To satisfy the first prong of the *Strickland* test, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. In making this determination, the court's scrutiny of counsel's performance must be "highly deferential." *Id*. at 689. The court must strive to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. The court is further required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is [a petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id* (citation omitted).

To satisfy the second *Strickland* prong, a petitioner must demonstrate that counsel's deficient performance "prejudiced the defense" by "depriv[ing] the [petitioner] of a fair trial, a

trial whose result is reliable." *Id*. at 687.  The petitioner must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  If a petitioner fails to satisfy either *Strickland* prong, his claim fails. *Id*. at 697.  Counsel cannot be deemed ineffective solely for failing to present or pursue a meritless claim or objection.  *Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998); *Moore v. Deputy Comm'rs of SCI-Huntingdon*, 946 F.2d 236, 245 (3d Cir. 1991).

Finally, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  This is because both standards are "highly deferential," and "when the two apply in tandem, review is doubly so."  *Id.* (citation and quotations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id*.

   A.   **Ineffective Assistance of Counsel for Failure to Raise a Claim under *Batson v. Kentucky* ("Ground One")**[4]

---

[4] The Commonwealth asserts that all of Petitioner's claims are procedurally defaulted. The Commonwealth argues that because none of Petitioner's claims were raised on direct appeal or properly brought before the Superior Court, his present claims are without a basis for relief. "[I]f the final state court presented with a federal claim refuses to decide its merits based on an established state rule of law independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed unless there is cause and prejudice or a showing of innocence." *Sistrunk v. Vaughn*, 96 F.3d 666, 673 (3d Cir. 1996).  Yet, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (citation and quotation omitted).  In rendering its decision, the Superior Court stated that Petitioner had not complied with Pennsylvania Rule of Appellate Procedure 2216, which prevents courts from considering questions that are not "stated in the statement of questions involved or is fairly suggested thereby." *Newkirk*, No. 1768 EDA 2007, slip op. at 8.  However, the court went on to state, "[n]onetheless, we will proceed to address these issues."  This is not the type of clear and express language needed to invoke the adequate and independent state ground doctrine.  The Superior Court seemed to recognize a procedural ground for denying relief, stating that it "would be a

Petitioner argues that his trial counsel was ineffective for failing to raise a *Batson* claim during jury selection.  (Pet. 9; Pet. Mem. 2-7.)  Petitioner claims that counsel should have objected to the prosecutor's peremptory strikes, given that Petitioner made counsel aware of a policy whereby the Philadelphia District Attorney's Office excluded African American jurors on the basis of race.  (Pet. Mem. 2-3.)  Magistrate Judge Wells found that although the Superior Court's analysis was contrary to clearly established federal law, Petitioner was still unable to make the prima facie showing necessary for a *Batson* claim.  (R&R 10.)  Petitioner objects to the Report on the grounds that the Commonwealth's attorney received the discriminatory training, and that the trial counsel's failure to object prejudiced him.  (Objections 3-5.)

To establish a *Batson* claim, Petitioner must make a "prima facie showing that a peremptory challenge was exercised by the Commonwealth on the basis of race."  *Holloway v. Horn*, 355 F.3d 707, 719 (3d Cir. 2004) (citation omitted).  In order to establish a prima facie case, a five-factor test is used, which includes:  (1) how many members of the cognizable racial group are in the venire panel from which the petit jury is chosen; (2) the nature of the crime; (3) the race of the defendant and the victim; (4) the pattern of strikes against racial group jurors in the particular venire; and (5) the prosecutor's statements and questions during selection.  *Jones v. Ryan*, 987 F.2d 960, 970-71 (3d Cir. 1993).  If a prima facie case is established, "the prosecution must offer a race-neutral basis for striking the juror in question."  *Holloway*, 335 F.3d at 720 (citation omitted).  The court "must determine whether the defendant has shown purposeful discrimination."  *Id* (citation omitted).

The Superior Court reviewed Petitioner's claim and found that he failed to produce

---

sufficient basis for finding waiver."  *Id*.  The court went on to address Petitioner's claims without using any clear and express language that its holding relied on such procedural grounds.  Therefore, Petitioner's claims are not procedurally defaulted.

adequate factual evidence at trial to make a prima facie showing. *Commonwealth v. Newkirk*, No. 1768 EDA 2007, slip op. (Pa. Super. Ct. Jan. 27, 2009). Specifically, the court found:

> Here [Petitioner] fails to present any evidence of the races of the venirepersons who were peremptorily struck or accepted for the jury panel. [Petitioner] fails to proffer evidence of facts that, if established at a hearing, would have entitled him to relief. Instead, [Petitioner's] brief claims only that his Batson claim is "very powerful." [Petitioner] fails to plead and prove with any substance how this alleged error prejudiced him. [Petitioner] has not shown there is a reasonable probability that but for counsel's omission, the outcome of the trial would have been different.

*Id.* at 15-16. (internal citations omitted). Magistrate Judge Wells determined that the Pennsylvania Superior Court's analysis was contrary to Third Circuit precedent. (R&R 9.) Judge Wells found that according to *Holloway v. Horn*, 355 F.3d at 726, a petitioner need not make a record for review of a *Batson* claim. (R&R 9.) We disagree. When a petitioner brings forth a *Batson* claim based on a single strike, accompanied by a showing that the prosecutor's statements and questions to the juror support an inference of discrimination, it is not necessary to "identify the race of all veniremen removed by the prosecution" in order to establish a prima facie case. *Holloway*, 355 F.3d at 726. However, if a petitioner "is claiming a pattern of strikes to support an inference of discrimination, then a record of the race-based strikes that preceded the objection is also required." *Id.* Here, Petitioner claims that during *voir dire*, young African American men and women were struck, and that the "pattern was obvious." (Pet. Mem 2.) However, there is nothing in the record that establishes the race of the jurors who were struck. In addition, there is no evidence in the record that establishes the composition of the venire panel. Petitioner has failed to provide such evidence, and therefore cannot satisfy the first and fourth prongs of his prima facie case. Therefore, Petitioner is not entitled to relief. *See Abu-Jamal v. Horn*, 520 F.3d 272, 291-92 (3d Cir. 2008), *vacated on other grounds by Beard v. Abu-Jamal*,

558 U.S. 1143 (2010) (finding that the petitioner failed to establish a prima facie case when there was "no factual finding at any level of adjudication, nor evidence from which to determine the racial composition or total number of the entire venire . . . ."); *Deputy v. Taylor*, 19 F.3d 1485, 1492 (3d Cir. 1994) (finding that the petitioner failed to establish a prima facie case when he did not present evidence of the racial composition of the venire panel); *Porter v. Horn*, 276 F. Supp. 2d 278, 335 (E.D. Pa. 2003) (same); *Jones v. Vaughn*, No. 95-4189, 1996 WL 134802, at *4 (E.D. Pa. Mar. 25, 1996) (same).

Petitioner argues that his prima facie case is met because the Philadelphia District Attorney's Office had a policy of impermissibly striking African American jurors. (Pet. Mem. 2-3.) Petitioner claims that during *voir dire*, he told counsel about a 1997 magazine article that described how former Assistant District Attorney ("ADA") Jack McMahon trained other assistant district attorneys to use peremptory strikes in order to prevent certain categories of African Americans from serving on juries. (*Id.*) Petitioner argues that the case *Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005), supports his *Batson* claim. In *Wilson*, the Third Circuit reviewed a habeas petition in which the petitioner had been prosecuted by former ADA Jack McMahon. *Id.* at 656. The Third Circuit determined that Wilson had established a *Batson* violation, citing both McMahon's controversial statements regarding jury selection and McMahon's conduct during the jury selection. *Id.* at 656-68. Petitioner's case bears no resemblance to *Wilson*. Unlike the petitioner in *Wilson*, Petitioner was prosecuted by ADA Roger King, not by Jack McMahon.

Furthermore, "[c]ourts in this District have recognized that 'discriminatory intent cannot be inferred from the mere existence of the training video'; where the prosecutor at issue was not involved in the lecture or tape, 'the courts have required some evidence of a link between that attorney and the tape.'" *Howard v. Horn*, 56 F. Supp. 3d 709, 724 (E.D. Pa. 2014) (quoting

11

*Rollins v. Horn*, No. 00-1288, 2006 WL 2504307, at *4 (E.D. Pa. Aug. 17, 2006)).  Petitioner

alleges that ADA King "attended many training seminars taught by ADA Jack McMahon" and

that ADA King "follow[ed] the training of his teacher."  (Objections 2.)  Petitioner offers no

evidence to support these allegations or that ADA King was connected to ADA McMahon in any

way.  As the Superior Court correctly found, Petitioner cannot rely on the McMahon lecture to

establish a prima facie *Batson* claim.  *See Clark v. Beard*, No. 10-3164, 2015 WL 7294971, at

*51 (E.D. Pa. June 1, 2015) (finding that the petitioner did not establish a prima facie *Batson*

claim when he offered no evidence that the trial prosecutor was exposed to the training materials

or that she was influenced by a "culture of discrimination"); *Howard*, 56 F. Supp. 3d at 724

(finding that the petitioner did not establish a prima facie *Batson* claim when he did not present

"any facts that support any direct link between the prosecutor in his case and the training video"

or that "the prosecutor in his case was aware of or attended the alleged lecture").

　　　We have reviewed transcripts of the *voir dire* proceedings, and we cannot find any

questions that implicate race.  (*See* N.T. 11/4/99 at 33-170.)[5]  Of the nine jurors who were struck

peremptorily by the Commonwealth, ADA King asked questions of only two.  (*See* N.T. 11/4/99

at 56-57, 166-67.)  ADA King asked the jurors the general location of their residence, the gender

of their children, how long they were employed at their current jobs, and whether they would be

biased given that one of the charges involved sexual assault.  (*Id*.)  These questions do not evince

a discriminatory motive.  Rather, they are neutral and common.  Of the other jurors who were

struck, it was either the judge or Petitioner's counsel who asked questions.  ADA King struck

these jurors for seemingly proper reasons.  In total, five jurors were struck after they stated that

---

[5] Petitioner also claims that his counsel objected and raised a *Batson* challenge only after
the Commonwealth's sixth peremptory strike.  (Pet. Mem. 4.)  We have found no such objection
in the record.

close family members had been arrested for crimes, (*id*. at 30-31, 53-54, 129-30, 134; N.T. 11/5/99 at 42-43), while another was struck after she expressed significant hardship due to having two jobs.  (N.T. 11/5/99 at 17.)  Of the three remaining jurors, there is nothing in the record that indicates that the Commonwealth's peremptory challenges were motivated by racial bias.  Accordingly, Petitioner cannot establish a *prima facie* case under the *Batson* standard.

It is worth noting that the evidence against Petitioner was overwhelming.  Petitioner's co-assailant, Darryl Robinson, testified that Petitioner killed Ms. DeVita.  (N.T. 11/12/99 at 90-120.)  Petitioner's friend, Roland Thomas, attempted to cast the blame of the murder onto Mr. Robinson, but was impeached with a statement he gave earlier where he said that Petitioner admitted to the killing.  (*Id*. at 44.)  Petitioner's own statement given to police was also presented, where he admitted to being at the scene of the crime, and to binding Ms. DeVita.  (*Id*. at 12.)  Holly James, the surviving victim, testified that she saw Petitioner at the home a few hours before the murder.  (*Id*. at 50.)  Petitioner's former employer also testified that Petitioner was assigned to the victims' home.  (N.T. 11/9/99 at 67-72.)  The victims' neighbor, Joseph Gonzalez, testified that he saw co-assailant Robinson toss bags to Petitioner at the home around the time of the murder.  (N.T. 11/10/99 at 2-19.)  Finally, a police officer testified that Ms. DeVita's stolen car was crashed, and that Petitioner's fingerprints were recovered from the vehicle.  (*Id*. at 54-58, 59-84.)

Petitioner cannot establish a *Batson* claim.  The trial record lends no credence to Petitioner's claim that the Commonwealth used its peremptory challenges to strike African American jurors in violation of *Batson*.  Accordingly, Petitioner's trial counsel cannot be deemed to have been ineffective for failing to present a meritless claim.  *Parrish*, 150 F.3d at 328-29 (3d Cir. 1998).  Petitioner is therefore not entitled to relief and his claim in Ground One will be

13

denied.

**B.    Ineffective Assistance of Counsel for Failure to Raise an Alibi Defense ("Ground Two")**

Petitioner argues that trial counsel was ineffective for failing to raise an alibi defense. Petitioner claims that trial counsel failed to contact his father, who would have provided the names of potential alibi witnesses. Magistrate Judge Wells concluded that because Petitioner did not provide the name of a single witness, the Superior Court reasonably applied federal law in dismissing the ineffective assistance of counsel claim. Petitioner objects to the Report and Recommendation on the grounds that his counsel was ineffective for failing to investigate a list of alibi witnesses Petitioner's father supposedly had.[6]

There is no reason to doubt the correctness of the Magistrate's Report and Recommendation or the Superior Court's ruling. Under Pennsylvania law, a petitioner wishing to prevail on a claim of ineffective assistance based on the failure to provide an alibi defense must demonstrate that:  (1) the alibi witness existed; (2) the witness was available and willing to testify for the defense; (3) counsel knew or should have known of the witness' existence; (4) the witness was willing to testify;  and (5) the absence of the testimony prejudiced the petitioner so as to deprive him of a fair trial. *Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007). Because Petitioner was unable to satisfy any of these requirements, the court found Petitioner's claim meritless. *Newkirk*, No. 1768 EDA 2007, slip op. at 17.  Petitioner has not identified any alibi witness willing to testify on his behalf.  Petitioner did not even provide an affidavit from the

---

[6] Petitioner did "handiwork and yard cleanup work" for a number of clients.  He contends that his father had a list of the names of those clients and their addresses.  He contends that trial counsel should have retrieved that list from his father and interviewed each of the clients to find out which client he was working for on the day of, and at the time of, the murder.  He does not tell us why he did not simply tell trial counsel which client he was working for that day and have counsel interview that client.

alibi witness.  As the Superior Court stated, a claim of ineffectiveness for failure to present a witness requires that the "existence and availability of the witness must be shown . . . ."  *Id.* at 19 (citing *Commonwealth v. Petras*, 534 A.2d 483, 485 (Pa. Super. 1987)).  "A claim of ineffective assistance of counsel for failure to call witnesses at trial must fail where a habeas petitioner fails to sufficiently identify possible witnesses or describe what those witnesses might have said." *Smith v. Superintendent of SCI Huntingdon*, No. 08-2901, 2009 WL 4727723, at *10 (E.D. Pa. Dec. 3, 2009); *see also United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (stating that an ineffectiveness claim based on counsel's failure to call certain witnesses was "conclusory and too vague to warrant further investigation" where the petitioner failed to sufficiently identify potential witnesses); *United States v. Moscony*, No. 8-258-01, 1996 WL 411275, at *3 (E.D. Pa. July 12, 1996) (finding that the petitioner "failed to make even a colorable claim" when he did not identify who his trial counsel could have called as defense witnesses).  The Superior Court provided a reasonable argument as to why Petitioner's trial counsel met *Strickland*'s deferential standard.  Petitioner has offered nothing to indicate that the Superior Court's decision was contrary to or involved an unreasonable application of clearly established federal law, or was based upon an unreasonable determination of the facts.

Petitioner claims that because he was incarcerated following the murder of Ms. DeVita, he could not obtain the names or addresses of the supposed alibi witnesses.  (Pet. Mem. 8.)  Therefore, Petitioner asserts that counsel's failure to obtain the names and addresses of witnesses from his father resulted in an unconstitutional level of ineffectiveness.  (*Id.*)  A failure to investigate potential witnesses can amount to ineffective assistance of counsel.  *See, e.g.*, *United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989).  Yet, "[a]ttorneys are not required to call every witness suggested to them; their expertise leads them to choose only the witnesses likely to assist

15

the case . . . .  This is precisely the type of strategic decision which the Court in *Strickland* held

to be protected from second-guessing."  *United States v. Ciancaglini*, 945 F. Supp. 813, 823

(E.D. Pa. 1996) (internal citations omitted); *see also Government of Virgin Islands v.*

*Weatherwax*, 77 F.3d 1425, 1434 (3d Cir. 1996) (stating that witness selection is "among the

non-fundamental decisions that counsel is entitled to make at trial," and federal courts generally

"will not second-guess tactical decisions of counsel in deciding whether to call certain

witnesses" (internal quotation marks and citations omitted)).  The Superior Court noted that

Detective Leon Lubiejewski testified at the trial.  He read a statement given to him by Petitioner

following his arrest.  *Newkirk*, No. 1768 EDA 2007, slip op. at 17.  Petitioner explained in detail

to the detective that he was in fact at Ms. DeVita's home on the day of the murder, and that he

participated in the robbery.  *Id*. at 17-19.  The court found that this testimony was completely

inconsistent with Petitioner's assertion that he had an alibi witness.  *Id.* at 17.  Any reasonable

court would have made the same finding.

The Superior Court's discussion provides a reasonable analysis of why Petitioner's trial

counsel was not ineffective.  Moreover, Petitioner has failed to demonstrate how his counsel's

actions resulted in prejudice.  Given Petitioner's inculpatory statements, as well as trial

testimony from witnesses that placed Petitioner at the scene of the crime (*see* N.T. 11/9/99 at 67-

72; N.T. 11/10/99 at 7-19, 32-41; N.T. 11/12/99 at 50), Petitioner has failed that prove that but-

for counsel's error, there is a reasonable probability that the jury's verdict would have been

different.  *See Summers v. Carroll*, No. 04-132, 2006 WL 1338770, at \*5 (D. Del. May 16, 2006)

(finding that the petitioner failed to prove ineffectiveness when he did not demonstrate prejudice

from his attorney's failure to investigate two unidentified witnesses); *United States v. Hatcher*,

No. 94-173-1, 1997 WL 698488, at \*3 (E.D. Pa. Nov. 7, 1997) (finding that the petitioner failed

to prove ineffectiveness when he did not demonstrate how unnamed witnesses would have impacted the outcome of his trial).

Petitioner cites *United States v. Gray*, 878 F.2d 702 (3d Cir. 1989) to support his argument that counsel was ineffective.  In *Gray*, the Third Circuit reversed the district court's dismissal of a habeas petition, noting the ineffectiveness of the petitioner's trial counsel.  878 F.2d at 714.  Trial counsel in *Gray* had conducted virtually no pretrial investigation, submitted no discovery requests, and was generally unfamiliar with federal court practices.  *Id*. at 709.  The petitioner's attorney had not interviewed any of the twenty-five eyewitnesses to the incident.  *Id*. at 711.  At the evidentiary hearing for Gray's habeas petition, the trial counsel offered no strategic justification for his actions.  *Id*. at 712.  Petitioner's case bears no resemblance to *Gray*. Here, Petitioner has not provided any evidence to suggest his attorney was ineffective as was the attorney in *Gray*.  In addition, Petitioner's counsel was not obligated to pursue a defense that was plainly implausible.  Petitioner has not demonstrated that "counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, or that he was prejudiced by his attorney's performance.  Accordingly, Petitioner's claim in Ground Two will be denied.

C.    **Ineffective Assistance of Counsel for Failure to Litigate a Claim under *Brady v. Maryland* ("Ground Three")**

Petitioner claims that trial counsel was ineffective for failing to seek physical evidence preserved from the victim that was in the possession of the Commonwealth.  Magistrate Judge Wells found that the Superior Court reasonably applied federal law, as Petitioner provided no support for his assertion that the evidence he claimed was withheld even existed.  Petitioner objects to the R&R on the grounds that his counsel was ineffective for failing to seek and test all of the physical evidence in the Commonwealth's possession.  The Superior Court noted that the

17

record did not indicate that any DNA evidence was recovered from the scene of the crime or the victim. *Newkirk*, No. 1768 EDA 2007, slip op. at 21-22. Because there was no physical evidence to test, the Superior Court concluded that the Commonwealth did not commit a *Brady* violation. Consequently, counsel was not ineffective for failing to pursue a baseless claim.

We agree with the conclusion reached in the R&R that the Superior Court applied the *Strickland* and *Brady* standards reasonably. To establish a *Brady* violation, Petitioner must show that: (1) "the evidence at issue [was] favorable to [him], either because it was exculpatory, or because it [was] impeaching"; (2) the Commonwealth "either willfully or inadvertently" suppressed the evidence at issue; and (3) Petitioner suffered prejudice as a result of the suppression. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Petitioner must demonstrate both that the evidence was "actually suppressed, and [] that the suppressed evidence was material." *Slutzker v. Johnson*, 393 F.3d 373, 386 (3d Cir. 2004). For evidence to be considered material, there must be a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Petitioner has failed to establish a *Brady* violation. Petitioner is unable to show that relevant physical evidence even exists. Petitioner states that he "believes he read in a police report that body fluids/sperm was present." (Pet. Mem. 9-10.) However, Petitioner does not substantiate these allegations. Petitioner has not brought forward any evidence that police records detailing physical evidence exist. The Superior Court reviewed the record and found no such police reports. *Newkirk*, No. 1768 EDA 2007, slip op. at 20-23. We, too, find no record of such evidence. The Commonwealth "did not violate the dictates of *Brady* by failing to turn over something that did not exist." *Strube v. United States*, 206 F. Supp. 2d 677, 688 (E.D. Pa. 2002).

The only mention of physical evidence at trial occurred because Petitioner's counsel requested that Commonwealth test certain evidence on the victim's clothes.  (N.T. 11/3/99 at 2.)  Blood was found in the victim's underwear, and an unidentifiable stain was found on her collar.  (*Id.*; N.T. 11/9/99 at 2-3, 11-13.)  In addition, seminal fluid was found on the victim's clothing. However, the sample was destroyed during testing.  (N.T. 11/9/99 at 11-13.)

Petitioner also cannot show that counsel was ineffective for not pursuing the testing of more evidence.  As the Superior Court stated, "the vaginal penetration in the instant case was caused by a foreign object; therefore, the absence of seminal stain evidence was irrelevant. Thus, the absence of DNA evidence could not exculpate [Petitioner] on the deviate sexual intercourse charge nor on the murder and robbery charges for which overwhelming evidence placed defendant on the scene." *Newkirk*, No. 1768 EDA 2007, slip op. at 23.   Finally, even if Petitioner were able to satisfy these requirements, he is unable to show that had the Commonwealth disclosed such evidence to counsel, there is a reasonable probability that his trial outcome might have been different.  Given the overwhelming nature of the evidence against Petitioner, it is highly unlikely that any such evidence could have changed the jury's verdict.

Petitioner's *Brady* claim lacks merit.  The failure to raise a meritless claim does not render an attorney ineffective.  *Parrish*, 150 F.3d at 328-29.  Given the lack of support for Petitioner's claim of a *Brady* violation, the Superior Court reasonably found that Petitioner's trial counsel was not ineffective for failing to raise it.  Once again, Petitioner failed to provide any federal authority that was contravened or unreasonably applied by the Superior Court. Accordingly, Petitioner's Ground Three claim will be denied.

**D.      Ineffective Assistance of Counsel for Failure to Challenge the Weight and Sufficiency of Evidence ("Ground Four")**

In his Objections to the R&R, Petitioner advises that he is abandoning his claim that counsel was ineffective for failing to challenge the weight and sufficiency of the evidence in Ground Four.  Accordingly, we need not address the claim.

**E.      Petitioner Is Not Entitled to a Certificate of Appealability**

In order to obtain a certificate of appealability where a petition has been dismissed on the merits, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  There are no grounds on which reasonable jurists would disagree with our assessment.  Therefore, we decline to issue a certificate of appealability.

**IV.      CONCLUSION**

For the foregoing reasons, the R&R will be approved and adopted, and the Petition for Writ of Habeas Corpus will be denied without an evidentiary hearing.  No certificate of appealability will issue.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**